# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

CYNTHIA BOUSSON,

    Plaintiff,

vs.                                                                          CASE NO. CV-10-J-2415-NE

BEVILACQUA RESEARCH
CORPORATION,

    Defendant.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 15), brief (doc. 16), and evidentiary submissions (doc. 17) in support of its motion, to which the plaintiff filed a response and evidence in opposition (doc. 20). The defendant thereafter filed a reply (doc. 21). The court has reviewed the motion, the memoranda of law and the evidentiary submissions, as well as the pleadings filed by the parties to date.

## I. PROCEDURAL HISTORY

Plaintiff commenced this action by filing a complaint (doc. 1). By amended complaint, the plaintiff asserts that the defendant discriminated against her when it failed to provide a reasonable accommodation and then terminated her after she was off work for shoulder surgery, all in violation of the Americans with Disabilities Act

of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq,* as amended.[1]  The plaintiff further alleges that her termination was in violation of the Employee Handbook, and that said handbook formed a contract, which the defendant breached.

## II.  FACTUAL BACKGROUND

Considering the evidence before the court in the light most favorable to the plaintiff, the facts of this case are as follows:

The plaintiff began working for defendant as an accountant in 2004.[2]  Plaintiff depo. at 45-46.  In July of 2009 the plaintiff injured her shoulder.  *Id*. at 64-65.  After trying medication and physical therapy, plaintiff's doctor determined her shoulder would require surgery.  *Id*. at 66-67; defendant ex. 3-4 to plaintiff depo.  Initially, the plaintiff believed she would only need to be off work for three or four days.  Plaintiff depo. at 67, 71-72.  The plaintiff completed a leave request on December 1, 2009, for December 9-11, 2009, with the caveat that she may need to be off worker longer.  Plaintiff depo. at 73; defendant ex. 5 to plaintiff depo.  Jeri Bevilacqua, CEO of defendant, thought it was minor surgery that would require plaintiff to only be out a

---

[1]Because the plaintiff's claims arise after the adoption of the January 1, 2009, amendments to the ADA, the court has considered the plaintiff's claims under the post-amendment statutory requirements as set out in the ADAAA.

[2]Plaintiff's responsibilities in this regard included running day-to day operations of accounting, writing checks, paying bills, time sheet reporting, accounts payable, month-end closing, W-2s, sales and use taxes, payroll taxes, and day-to-day general ledger functions.

few days. Bevilacqua depo. at 45, 48.

On December 9, 2009, plaintiff had surgery. Plaintiff depo. at 73. On December 11, 2009, the plaintiff informed defendant that her shoulder surgery was more extensive than originally planned, and she would need to be off work an additional two weeks. *Id*. at 77-78. Because she lacked leave to cover this absence, she applied for short-term disability.[3] *Id*. at 77, 80-81; defendant ex. 6A to plaintiff depo. The defendant did not ask her for any kind of medical verification, but did allow her another two weeks off work, until December 28, 2009. Plaintiff depo. at 81; Bevilacqua depo. at 54.

Because plaintiff was normally responsible for payroll, and it had to be done on December 15, 2009, Bevilacqua called plaintiff to get her computer passwords, so Tony Bevilacqua, another accountant, could do it. Bevilacqua depo. at 56-58. However, later that day, plaintiff came in with the time sheets printed, even though they had already been printed out. *Id*. at 59. Geri Bevilacqua questioned why plaintiff was there when she was supposed to be off work, and further noted the plaintiff was not wearing a sling. *Id*., at 59-60.

Because of plaintiff's continued absence, Bevilacqua logged into plaintiff's

---

[3]The parties agree that the plaintiff was not covered by the Family Medical Leave Act because the defendant did not have enough employees at the Huntsville location to come under that Act. Plaintiff depo. at 61.

3

computer to access the accounts. Bevilacqua depo. at 75. She saw account errors in payroll taxes because there were negative numbers, which would not happen if the taxes had been paid. *Id*., at 75-76. She tried to go through the files to match all of the numbers up in the books, and found taxes unfiled from September. *Id.*, at 81. She continued going backwards through the books trying to find where the errors stopped. *Id*. Other errors in the payroll taxes were also found while the plaintiff was on leave. *Id*. at 89-90. Additionally, a $40,000.00 billing error by plaintiff was discovered on December 15, 2009, creating the impression there was money left in a contract when defendant was actually working at a $40,000.00 loss. Cook depo. at 80-81. *See also* plaintiff ex. 8 to Bevilacqua depo.

The plaintiff returned to work on December 28, 2009. Plaintiff depo. at 97. She was there about 30 minutes when her mother called to say her grandmother had died. Plaintiff depo. at 98. Bevilacqua saw her crying and told the plaintiff she should go home. Bevilacqua depo. at 65. Bevilacqua thought plaintiff was leaving under the bereavement policy and would be back in a day or two. Bevilacqua depo. at 69. Later on the 28th, the plaintiff spoke with Steve Cook, the accounting manager, by phone to let him know she would be out of work the next day to help her mother with funeral arrangements. Plaintiff depo. at 102. She also told Cook that she had come back too soon and was going to call her doctor to see if she could have an

additional two weeks off because she was still in pain. Plaintiff depo. at 101-102; Cook depo. at 31-32.

When Bevilacqua learned this, she called the plaintiff and stated that she would need to hire someone full time and the plaintiff could return part time, because she had year end accounting to be done and had a business to run. Bevilacqua depo. at 73, 91; plaintiff depo. at 103. Bevilacqua was overwhelmed trying to get the books closed, the financials done, and the payroll taxes properly filed and paid. Cook depo. at 34, 62-64. The plaintiff did not mention to Bevilacqua that she was still having problems with her shoulder. Bevilacqua depo. at 86. Rather, the plaintiff said she would be back to work on December 30. Plaintiff depo. at 105; Bevilacqua depo. at 92. Because of this sudden change, Bevilacqua told the plaintiff she would need a doctor's note stating the plaintiff could return to work. Bevilacqua depo. at 93. However, on December 29, 2009, plaintiff spoke with her doctor who said he would approve an additional two weeks off, until January 11, 2010. Plaintiff depo. at 106, 117. She also requested the doctor send a note to the defendant, which he did. Plaintiff depo. at 117; *see* defendant ex. 9 to plaintiff depo.; Bevilacqua depo. at 99-100.

Because she did not know that the Huntsville office did not have enough employees to meet the requirements of the Family Medical Leave Act (FMLA), the

plaintiff went to work on December 30, 2009, to complete FMLA paperwork, under the belief that would protect her job. Plaintiff depo. at 107-110, 116; defendant ex. 11 to plaintiff depo. She learned shortly thereafter that she was not eligible for FMLA leave. Plaintiff depo. at 124, 130.

Also on December 30, 2009, Bevilacqua learned from another employee that the plaintiff had shared confidential information about one employee with another employee and that she had removed a letter of reprimand from her own personnel file and destroyed it.[4] Bevilacqua depo. at 106-107; *see also* Riplee Graham depo. at 45-46. Bevilacqua further learned that the plaintiff had stated on December 30, 2009, if she lost her job she would be talking to a lawyer. Bevilacqua depo. at 107; plaintiff depo. at 110, 123. When Bevilacqua mentioned the confidential information sharing to Cook, he told her he already knew it had occurred and had counseled the plaintiff regarding this incident. Bevilacqua depo. at 109.

Bevilacqua decided to wait until after the holidays to make any decision as to what action she would take with regard to plaintiff. Bevilacqua depo. at 120. On January 4, 2010, Bevilacqua went into plaintiff's personal file to confirm whether the

---

[4]Steve Cook testified he knew about the shredding of the reprimand not long after it happened but did not bother telling Bevilacqua because Bevilacqua protected plaintiff. In fact, when he had tried to discipline plaintiff another time, Bevilacqua took him "to task." Cook depo. at 49-50, 55-56. Riplee Graham reported this event to Cook within a day or two of it happening. Graham depo. at 47.

letter of reprimand was missing. *Id*. at 111. When she found it was gone, Bevilacqua felt she had no alternative but to terminate the plaintiff, because of that and because of all the accounting errors she had found. *Id*. at 121. She believed she had cause to terminate the plaintiff. *Id*. at 130. She also told Cook she had to have some help and could not wait until plaintiff came back. Cook depo. at 71. Bevilacqua also told Cook that she wanted to terminate plaintiff because of all the accounting errors, the contract errors, and the unpaid payroll taxes. Cook depo. at 73, 86-89.

  The plaintiff received a letter on January 9, 2010, dated January 5, 2010, that she was terminated by defendant. Plaintiff depo. at 139, 141. The only reason for her termination given was that it was in the best interests of the defendant. *Id*; defendant ex. 14 to plaintiff depo. As far as the plaintiff knows, her doctor never gave her specific restrictions. Plaintiff depo. at 118. However, she did not have full range of motion and was still on pain medication during this time. *Id*. at 118-119. Because she was on short term disability benefits, the plaintiff decided she was terminated due to a "disability." *Id*. at 138-139. She did not know if anyone "regarded her" as having a disability. *Id*. at 140-141.

  After her termination by the defendant, the plaintiff collected full unemployment benefits. Plaintiff depo. at 42. By January 30, 2010, the plaintiff reported a pain rating of zero and was discharged from physical therapy. Plaintiff

depo. at 127; defendant ex. 12 to plaintiff depo.  She has had no further problems with her shoulder since.  Plaintiff depo. at 127-128.  The plaintiff filed an EEOC charge on January 27, 2010, stating that she were terminated in violation of the ADA.  Defendant ex. 13 to plaintiff depo.  Although her attorney put in her EEOC charge that she suffered a "complete loss of function in [her] left arm," she agrees this was not true and she had no such loss.  Plaintiff depo. at 137-138.  Her arm was in a sling for five weeks though.  Plaintiff depo. at 120-121, 131.

## II. STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct.

depo. at 127; defendant ex. 12 to plaintiff depo.  She has had no further problems with her shoulder since.  Plaintiff depo. at 127-128.  The plaintiff filed an EEOC charge on January 27, 2010, stating that she were terminated in violation of the ADA.  Defendant ex. 13 to plaintiff depo.  Although her attorney put in her EEOC charge that she suffered a "complete loss of function in [her] left arm," she agrees this was not true and she had no such loss.  Plaintiff depo. at 137-138.  Her arm was in a sling for five weeks though.  Plaintiff depo. at 120-121, 131.

## II. STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct.

1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005). The language of Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. With these standards in mind, the court considers each of the plaintiff's claims.

## IV. DISCUSSION

**A. Americans with Disabilities Act**

The ADA provides that no covered employer shall discriminate against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case under the ADA, the plaintiff must show that (1) she has, or is perceived to have, a disability; (2) she is a qualified individual "which is to say, able to perform the essential functions of the employment position that she holds ... with or without reasonable accommodations; and (3) she was discriminated against because of the disability." *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1215 (11th Cir.2004) (quoting *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th Cir.2002). *See also Greenberg v. Bellsouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir.2007).

The plaintiff alleges that she meets the above standard, specifically alleging that she was terminated because of her "disability." Plaintiff's response (doc. 20) at 15-16. The courts use the familiar *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) framework to analyze ADA claims. *E.g., Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir.2000). To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that (1) she has a

disability; (2) she is able to perform the essential functions of her job; and (3) her employer unlawfully discriminated against her because of her disability. *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir.2000). Once a prima facie case has been established, defendants may rebut it by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Cleveland v. Home Shopping Network, Inc.,* 369 F.3d 1189, 1193 (11th Cir. 2004). If defendant successfully rebuts plaintiff's prima facie case, plaintiff bears the burden of establishing that defendant's reason is pretextual. *Id*.

The parties' dispute focuses almost exclusively on whether the plaintiff's injury and subsequent surgery qualify as a disability for purposes of the ADA. Clearly, under the ADA prior to the 2008 amendments, the plaintiff would not meet the definition of "disability," as a "temporary inability to work while recuperating from surgery is not such a permanent or long-term impairment and does not constitute evidence of a disability covered by the Act." *Sutton v. Lader,* 185 F.3d 1203, 1209 (11th Cir.1999); citing *Huff v. UARCO, Inc*., 122 F.3d 374 (7th Cir.1997) (temporary condition not disability under the Act); *Sanders v. Arneson Products, Inc*., 91 F.3d 1351, 1354 (9th Cir.1996) (plaintiff's four-month temporary impairment was too brief to be a "disability"); *Vande Zande v. Wisconsin Dep't of Administration*, 44 F.3d 538, 544 (7th Cir.1995) ("intermittent, episodic impairments are not disabilities"); *Evans*

11

*v. City of Dallas*, 861 F.2d 846, 852-53 (5th Cir.1988) (knee injury not a disability). *See also Jones v. STOA International/Florida, Inc.,* 2011 WL 1332182, 2-3 (11th Cir.2011); *Garrett v. University of Alabama at Birmingham Board of Trustees,* 507 F.3d 1306, 1315 (11th Cir.2007) ("A severe limitation that is short term and temporary is not evidence of a disability"). "It is insufficient for individuals attempting to prove disability status ... to merely submit evidence of a medical diagnosis of impairment. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002). Here, the defendant asserts that the plaintiff's shoulder injury was just that, a one time, non-permanent injury from which she has fully recovered. Hence, defendant argues the plaintiff is not entitled to the protections of the ADA, even under the amendment's more generous definition of "disability."

The 2008 amendments specifically address short term impairments, stating that "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section." 29 C.F.R. § 1630.2(j)(1)(ix).[5] However, those amendments take effect May 24, 2011, thus calling

---

[5]Although few courts have addressed the 2008 amendments, the consensus among them is that the ADAAA does not explicitly overturn the finding in *Toyota Motor* that temporary disabilities do not qualify for ADA protection. *See e.g. Feldman v. Law Enforcement Associates Corp.*, 2011 WL 891447, 9 (E.D.N.C.2011) citing *Munoz v. Echosphere, L.L.C.*, 2010 WL 2838356, at *12 (W.D.Tex. July 15, 2010). However, as previously noted, the ADAAA states that the definition of disability is to be construed "in favor of broad coverage of individuals ... to the maximum extent permitted" by the law. *Id.*, citing 42 U.S.C. § 12102(4)(A). In addition, the proposed EEOC regulations address this issue. "Temporary, non-chronic impairments of short

into question whether the plaintiff may reap the benefits of this amended definition of disability. For purposes of this opinion, the court dubitably assumes the plaintiff could prove she falls within the amended definition of "disability." As such, the court assumes, solely for purposes of this opinion, that the plaintiff could establish her prima facie case under the ADA.

The burden therefore shifts to the defendant to articulate a legitimate, non-discriminatory reason for plaintiff's termination. *See Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir.2001). The defendant simply has the burden of production and need not convince the court that its was motivated by the stated reason. *Id.* Here, there is evidence, in the form of Ms. Bevilacqua's deposition, submitted in support of their respective positions by both the plaintiff and defendant, that the plaintiff was terminated due to mistakes found in her bookkeeping resulting in unpaid taxes, mistakes in bookkeeping resulting in a $40,000.00 error in a contract, plaintiff's sharing of confidential information about another employee, and plaintiff's removal of a disciplinary letter from her own personnel file.

Having been faced with these reasons, the inferential presumption of

---

duration with little or no residual effects (such as the common cold, seasonal or common influenza, a sprained joint, minor and non-chronic gastrointestinal disorders, or a broken bone that is expected to heal completely) usually will not substantially limit a major life activity. *Id.*, citing 74 Fed.Reg. at 48443 (to be codified at 29 C.F.R. § 1630.2(j)(8)).

discrimination was eliminated, and the plaintiff is left with the ultimate burden of proving that defendant intentionally discriminated against her because of her disability. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43, 120 S.Ct. 2097 (2000). In order to prove this intentional discrimination, plaintiff must show defendant's reasons were "unworthy of credence" and a pretext for discrimination. *Id.* However, plaintiff freely admits these mistakes were made by her. See e.g. plaintiff depo. at 132-133 (Ms. Bevilacqua redid W-2's and sent out corrected ones); 144 (misattributing hours to tasks and miscalculating overtime); 145 (concerning mistakes on invoices); 146 (violation of confidentiality agreement). In fact, the plaintiff agrees these were all valid criticisms of her work.[6] Plaintiff depo. at 145. As such, the court finds the plaintiff wholly failed to rebut the defendant's legitimate, non-discriminatory reason for her termination.

## B.  Breach of Contract

The plaintiff also claims that the employee handbook formed the basis of a contract because her employment would have been protected if she was eligible for leave under the Family and Medical Leave Act ("FMLA"). However, the plaintiff

---

[6]The plaintiff does deny destroying the disciplinary letter in her personnel file, but has no explanation for what happened to it. Plaintiff depo. at 151-153. She further relates that she also had a copy of this letter and the copy no longer exists because "I got rid of it when I was terminated." *Id.*, at 163-164.

wholly failed to address this claim in her response to the defendant's motion for summary judgment, and the court therefore finds this claim abandoned. *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.,* 325 F.3d 1274, 1284 (11th Cir.2003); *see also Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1322 (11th Cir.2001).

### IV. CONCLUSION

Having considered the foregoing, and finding that no genuine issues of material fact exist and that the defendant is entitled to judgment in its favor and against the plaintiff, the court shall so rule by separate order.

**DONE** and **ORDERED** this the 25th day of May 2011.

*[signature]*

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE